## JOHN NOBLE *versus* HARRISON STEELE.

Where a seaman ships for a general trading voyage, without any limitation as to time, and without any certain destination or fixed limit for the voyage, the contract may be terminated at any time by either party.

Where the contract is for a general voyage, with no limitation except as to time, it will be construed as a contract for service for the time named in the articles to be employed between such ports as the master may select.

Under such contract, if a seaman, without adequate cause, leaves the vessel before the expiration of the time specified, he will forfeit his wages earned prior to the desertion.

A seaman signed certain shipping articles, which stipulated that the vessel was "bound from the port of Bangor to one or more ports in or out of the United States, on a general trading voyage, for the term of three calendar months":— *Held*, that the master had a right to the services of the seaman for the three months, between such ports as he might choose to trade, and that the seaman having deserted before the expiration of that period, and not having returned to duty nor offered to do so, thereby forfeited his wages earned prior to the desertion.

ON EXCEPTIONS from *Nisi Prius.*

Assumpsit for seaman's wages, fifty-one days, at eighteen dollars per month, on board the schooner Gen. Scott. The defendant introduced the shipping articles of the vessel, in which plaintiff sailed, for the voyage during which the wages sued for were claimed to have been earned. By these articles, plaintiff shipped for "three calendar months on a general trading voyage." Defendant also introduced Thomas Mason, who testified that he was present at a conversation between plaintiff and defendant, in which plaintiff said he was going to leave and wanted his wages. The defendant protested against his leaving, and said he had not fulfilled his time. This was in Bangor, at or near the vessel, after plaintiff had served one month and nineteen days.

Upon the foregoing testimony and papers, the presiding Judge directed judgment to be entered for the defendant, to which the plaintiff excepted.

It was agreed between the parties, that if, in the opinion of the full Court, the foregoing evidence would in law warrant the judgment rendered, said judgment was to stand, if not, the defendant was to be defaulted.

*Knowles & Briggs,* for plaintiff.

1. The shipping articles are not binding upon the plaintiff, because they were not read to him.

2. The shipping articles are not binding because they are not according to law.

The first section of the Act of Congress, passed July 20th, A. D. 1790, provides that "the master of any vessel of the burthen of fifty tons or upward, bound from a port in one State, to a port in any other than an adjoining State, shall, before he proceed on such voyage, make an agreement, in writing, or in print, with every seaman on board, declaring the voyage or voyages, term or terms of time for which such seaman shall be shipped." These shipping articles declare but one voyage, and that a general trading voyage; and if there was more than one voyage, it should have been declared in the contract, or it is not binding.

3. The articles are not legal for want of definiteness in the description of the voyage. "From the port of Bangor, to one or more ports in or out of the United States, on a general trading voyage, for the term of three calendar months," is language so indefinite, that if the sailor read it, or it was read to him, he could not determine by it when he might quit. The term, "or elsewhere," in shipping articles, is void for indefiniteness or uncertainty, or to be construed as subordinate to the principal voyage. *Brown* v. *Jones & al.,* 2 Gall. 477; Am. Law Jour. 210; Gordon's Dig. 755; (note.)

4. Though there is no proof as to what kind of a voyage this was, other than the course of it, and what was carried, and where it was carried, as shown in the defence of Ellis, it is evident from this testimony, such as it is, that this voyage was a freighting voyage and not a trading voyage. A trading voyage is not a freighting voyage, and does not include it. *Brown* v. *Jones,* before cited.

5. Sect. 5, of Act of 1790, provides that if a seaman shall absent himself more than forty-eight hours, and an entry shall be made in the log book by the mate or other officer having charge of it, of the name of such seaman, on the day on which

he shall so absent himself, such seaman shall forfeit his wages, &c. Now suppose that these articles are legal and binding on the plaintiff, there is no evidence of any entry upon the "log," and hence, by statute, no forfeiture of wages.

But in *Spencer* v. *Eustis*, 21 Maine, 514, the Court make a distinction between a class of cases covered by this statute, and cases of desertion, "*animo non revertendi,*" working forfeiture of the seaman's wages under the maritime law. The opinion is not very full, and I have been unable to see why the statute does not control the maritime law, and govern every case that can possibly arise of desertion of more than forty-eight hours.

*G. W. Ingersoll,* for defendant, contended:—

That the desertion worked a forfeiture of the wages, and cited: *Spencer* v. *Eustice,* 21 Maine, 519; Abbott on Shipping, (Story's Ed.) 463, 2468, notes; *Cloutman* v. *Tennison,* 1 Sumner, 373; Ware's Rep. 309, 447; *Stark* v. *Parker,* 2 Pick. 267; *Webb* v. *Dickinfield,* 13 Johns. 390.

APPLETON, J.—The plaintiff, at Bangor, shipped on board the schooner Gen. Scott, on a general trading voyage, for *the term of three calendar months;* and the vessel having returned to Bangor, he there, without cause, deserted before the expiration of that time.

It was held by WARE, J., in *The Crusade,* Ware's Rep. 449, that where a seaman ships on a general trading voyage, without any limitation of time, and without any certain destination or fixed *terminus* of the voyage, and which may, at the pleasure of the master, be prolonged indefinitely, the legal construction of the agreement is that it is a contract which may be terminated at the will of either party.

In the present case, there is no *terminus* in space to the voyage. It might end at any port in or out of the United States, where the vessel might be at the expiration of the time for which the plaintiff had shipped.

The voyage was a *general trading voyage,* and was indefinite as to the ports in or out of the United States, between

Noble *v.* Steele.

which trading might be carried on. It might as well be exclusively between Portland and Bangor, during the whole period of the plaintiff's shipment, as between ports more distant. There is no limitation imposed, which prevents the master from trading between any two ports, where he could find a profitable commerce.

The contract of shipment disclosing no limit in space to the voyage, the only limitation to its duration is found to be one of time, and that limitation is most clearly expressed.

The true meaning of the contract of shipment is, that the plaintiff shipped for the term of three months, on a general trading voyage; and that the defendant has a right to his services for that time between such ports as he might choose to trade.

In *Spencer* v. *Eustis*, 21 Maine, 519, the shipment was "from the port of Frankfort, Maine, on freighting business, for the term of four months." In the case at bar, the shipment was "from the port of Bangor, on a general trading voyage, for the term of three calendar months." The general scope of the contract was the same in each case, and the same rules of law must be regarded as applicable. As the plaintiff deserted before the expiration of the time for which he shipped, and did not return nor offer to do so, and as he has offered no excuse for his desertion, his wages, earned before such desertion, are, by the maritime law, held to be forfeited.

*Nonsuit to stand.*

TENNEY, C. J., concurred.
RICE, J., dissented.